# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STATE BANK OF TEXAS,<br><br>                           Plaintiff,<br><br>    v.<br><br>SARJAN PATEL, *et al.*,<br><br>                         Defendants. | Case No. 16-cv-2692-BAS(BGS)<br><br>**ORDER GRANTING DEFENDANT RIVERVIEW DEVELOPMENT IV, LLC'S MOTION TO DISMISS**<br><br>**[ECF No. 9]** |

     On September 25, 2014, Hemant Chhatrala and his brothers Ashvin and Shailesh Patel (collectively, "the three Debtors") transferred a property they owned together at 756 Bangor Street, San Diego, California (the "Bangor Street Property") to Chhatrala's son and daughter-in-law, Sarjan and Monali Patel ("the Patels"), who are both defendants in this case. At the time of the transfer, the three Debtors owed money to Plaintiff State Bank of Texas ("State Bank"), and Chhatrala owed money to Defendant Riverview Development IV, LLC ("Riverview"). Riverview sued Chhatrala and the Patels for fraudulent conveyance in San Diego Superior Court and, after eighteen months of litigation, entered into a Settlement Agreement guaranteed

by the Bangor Property.

State Bank then sued both the Patels and Riverview in this case for fraudulent conveyance. Riverview moves to dismiss arguing that State Bank cannot show that the transfer from the Patels to Riverview caused any damages to State Bank. For the reasons discussed below, the Court **GRANTS** the Motion to Dismiss. (ECF No. 9.)

I.  STATEMENT OF FACTS

A.  Riverview Sues Chhatrala

On March 24, 2014, Riverview sued Chhatrala and others in Alameda County Superior Court for fraud and other causes of action. (RJN Ex. 1, ECF No. 9-5.[1]) The Alameda Court granted Riverview's request for a writ of attachment in the amount of $647,782.98 against several Chhatrala properties, including the Bangor Street Property. (RJN Ex. 2.) On September 19, 2014, Riverview recorded this Writ of Attachment against the Bangor Street Property in the San Diego County Recorder's Office. (RJN Exs. 3-4.)

One week later, on September 25, 2014, the three Debtors transferred the Bangor Street Property, via three separate Quitclaim Deeds, to Chhatrala's son and daughter-in-law, the Patels. (First Amended Complaint ("FAC") ¶ 4, ECF No. 5.) Riverside filed a Complaint against, among others, Chhatrala and the Patels to set aside the fraudulent conveyance in San Diego Superior Court on November 10,

---

[1] Riverview requests that this Court take Judicial Notice of various Court filings in the cases leading up to this one, as well as the Settlement Agreement referenced in State Bank's Complaint. (ECF No. 9-4.) State Bank does not oppose. A court may take judicial notice of a fact that is not subject to reasonable dispute. Fed. R. Evid. 201. Furthermore, the Court may consider material properly subject to judicial notice on a motion to dismiss without converting the motion into one for summary judgment. *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994). Additionally, documents specifically identified in the complaint, like the Settlement Agreement in this case, whose authenticity is not questioned by the parties may be considered in a motion to dismiss. *Fecht v. Price Co.*, 70 F.3d 1078, 1080 n.1 (9th Cir. 1995) (superseded by statutes on other grounds.) Moreover, the court may consider the full text of those documents even when the complaint quotes only selected portions. *Id.* Accordingly, the Court **GRANTS** the Request for Judicial Notice ("RJN"). (ECF No. 9-4.)

2014.² (RJN Ex. 5, ECF No. 9-6.) After eighteen months of litigation, on April 4, 2016, Riverview settled the case with an agreement by Chhatrala to pay $3,000,000 plus interest via wire transfer in six installment payments of $500,000 from April 18, 2016 to June 8, 2018. (Martinez Decl. Ex. 1 ("Settlement Agreement") ¶ 3, ECF No. 9-3.) Chhatrala further agreed to give Riverview "a non-recourse guaranty . . . with original and notarized signatures from Sarjan and Monali Patel" which "shall guarantee" the amount due under the agreement and "shall be secured by a deed of trust recorded against [the Bangor Street Property.]" (Settlement Agreement ¶ 6.)

Furthermore, the parties recognized "that there is a risk that the transfer of the Bangor Street Property [from the three Debtors to the Patels] by Quitclaim Deed[] recorded . . . on September 25, 2014, may not be recognized as valid and could be voided as a result of [another lawsuit pending in San Diego Superior Court.]" (Settlement Agreement ¶ 8.) Thus, "[t]o avoid the loss of the security provided by the Guaranty, and consistent with California Civil Code § 2883(a)," Chhatrala agreed to provide Riverview with a Replacement Deed of Trust giving Riverview the same interest in the Bangor Street Property if at any time the ownership of the Bangor Street Property reverted back to the Debtors from the Patels. (*Id.*; *see also* FAC ¶ 41.)

Thus, as part of this Settlement Agreement, on or about April 4, 2016, Riverview recorded a $1,652,859 lien on the Bangor Street Property. (FAC ¶ 7.) State Bank claims Riverview gave no value to the Patels in exchange for the Riverview Transfer³—although the transfer was to settle a lawsuit filed against both the Patels and Chhatrala for fraudulent conveyance. (RJN Ex. 5, ECF No. 9-5.)

---

² Although State Bank alleges that this lawsuit was against Chhatrala only and not the Patels, that is not supported by the Complaint attached as Exhibit 5 to the Request for Judicial Notice.

³ State Bank alleges the $1.6 million lien is pledged as security for the debts of Chhatrala, not the Patels, hence the Patels received nothing of value. (FAC ¶ 75.)

### B. State Bank Sues Chhatrala

In February 2013, State Bank sued the three Debtors in Texas State Court to enforce personal guaranties made by the Debtors to State Bank and to collect $3.3 million in outstanding debt. (FAC ¶¶ 1-2, 21, 24.) On January 11, 2015, as a result of a mediated settlement process, the Debtors and State Bank entered into an agreement for the full amount of the unpaid balance plus interest and attorneys' fees. (FAC ¶¶ 33, 34.) The three Debtors were to transfer properties sufficient to satisfy this judgment on or before February 28, 2015, but failed to do so. (FAC ¶¶ 36, 37.)

State Bank filed this lawsuit on October 31, 2016 against the Patels alleging that the fraudulent conveyance of the Bangor Street Property from the three Debtors to the Patels should be voided pursuant to California Civil Code § 3439.01. (ECF No. 1.) On November 28, 2016, State Bank filed a First Amended Complaint adding Riverview as a defendant and adding an allegation that the April 4, 2016 Settlement Agreement between Chhatrala and Riverview should also be voided as an actual and constructive fraudulent transfer under California Civil Code § 3439.01. (FAC ¶ 8.) State Bank alleges Riverview was an immediate transferee of the Patels' interest in the Bangor Street Property and did not receive transfer of the Bangor Street Property in good faith because Riverview "had actual notice of facts which suggested to a reasonable person that the House Transfer was fraudulent." (*Id.* ¶ 44.) Thus, State Bank requests not only that the transfer from the Patels to Riverview be voided, but that the entire April 4, 2016 Settlement Agreement between Chhatrala, the Patels, and Riverview be voided.

### C. Value of the Bangor Street Property

According to the FAC, the Bangor Street Property is currently valued at approximately $5.5 million. (FAC ¶ 4.) There is no indication from the Complaint as to current equity in the property or the remaining equity after Riverview's lien in the amount of $1,652,859 is satisfied.

"In 2009, the Debtors represented to [State Bank] that the House had a market value of approximately $6,100,000 with approximately $4,260,000 in equity." (FAC ¶ 69.)

Riverview moves to dismiss claiming that State Bank does not and cannot allege that the second transfer, that is the transfer from the Patels to Riverview as part of the April 4, 2016 Settlement Agreement, caused any damages to State Bank. (ECF No. 9.)

## II. LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims asserted in the complaint. Fed. R. Civ. P. 12(b)(6); *Navarro v. Block*, 250 F.3d 729, 731 (9th Cir. 2001). The court must accept all factual allegations pleaded in the complaint as true and must construe them and draw all reasonable inferences from them in favor of the nonmoving party. *Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations, rather, it must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)) (alteration in original). A court need

not accept "legal conclusions" as true. *Iqbal*, 556 U.S. at 678. Despite the deference the court must pay to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts that [he or she] has not alleged or that defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

When a claim is based on fraud or mistake, the circumstances surrounding the fraud or mistake must be alleged with particularity. Fed. R. Civ. P. 9(b). If the allegations fail to satisfy the heightened pleading requirements of Rule 9(b), a district court may dismiss the claim. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1087, 1107 (9th Cir. 2003). To satisfy the particularity requirement of Rule 9(b), "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Id.* at 1106 (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)). Plaintiffs must plead enough facts to give defendants notice of the time, place, and nature of the alleged fraud, together with an explanation of the statement and why it was false or misleading. *See id.* at 1107. The circumstances constituting the alleged fraud must "be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Id.* at 1106 (quoting *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (internal quotation marks omitted); *see also In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1547 (9th Cir. 1994) (superseded by statute on other grounds as stated in *Ronconi v. Larkin*, 253 F.3d 423, 429 n.6 (9th Cir. 2001)). "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). A claim for actual fraudulent transfer is subject to the requirements of Rule 9(b), while a claim for constructive fraudulent transfer is not. *Kelleher v. Kelleher*, No. 13-cv-5450-MEJ, 2014 WL 94197, at *5 (N.D. Cal. Jan. 19, 2014).

//

## III. DISCUSSION

### A. California Civil Code § 3439

Under California Civil Code § 3439.04, a creditor may void a fraudulent transfer made with actual intent to hinder, delay or defraud any creditor, if the debtor made the transfer without receiving a reasonably equivalent value in exchange for the transferred property. "In order for a fraudulent transfer to occur, there must be a transfer of an asset as defined [in section 3439.]" *Fidelity Nat'l Title Ins. v. Schroeder*, 179 Cal. App. 4th 834, 841 (2009) (citations and emphasis omitted); Cal. Civ. Code § 3439.01(m) ("'Transfer' means every mode . . . or disposing or parting with an asset or interest in an asset."). An "asset" under § 3439 means property of a debtor, but does not include property encumbered by a valid lien. Cal. Civ. Code § 3439.01(a)(1).

The focus is on the intent of the transferor. *In re Beverly*, 374 B.R. 221, 235 (B.A.P. 9th Cir. 2007).[4] Since direct evidence of intent to hinder, delay or defraud is uncommon, determination is typically made from circumstances including the eleven non-exclusive "badges of fraud" factors listed in the statute that are probative of intent. *Id.*

If the transfer is voidable, judgment may be entered not only against the debtor transferee but also "an immediate or mediate transferee of the first transferee, other than" a "good faith transferee." Cal. Civ. Code § 3439.08(b)(1). Although a "good faith transferee" is not defined by the statute, the California Court of Appeal has required deliberate wrongful conduct on the part of the transferee.[5] *Lewis v. Superior Court*, 30 Cal. App. 4th 1850, 1858 (1995) ("good faith" means the "transferee did

---

[4] Since § 3439.08 is derived from § 550(a) of the Bankruptcy Code, "cases construing the Bankruptcy Code counterparts . . . are persuasive authority due to the similarity of the laws in this area." *Qwest Comm'ns Corp. v. Weisz*, 278 F. Supp. 2d 1188, 1192 n.2 (S.D. Cal. 2003).

[5] Whether a transfer is voidable under this statute is a question purely of California law. Therefore, a federal court construing the statute must predict what the California Supreme Court would rule if presented with the issue. *In re Beverly*, 374 B.R. at 232 (citing *Comm'r v. Estate of Bosch*, 387 U.S. 456, 465 (1967)).

not collude with the debtor or otherwise actively participate in the fraudulent scheme of the debtor."). Thus, one who becomes a transferee "by accident, or even negligently" is not a fraudulent transferee under § 3439.08(b)(1). *Id.*; *see also Kelleher*, 2014 WL 94197, at *5 (liability imposed if transferee colluded with the debtor or otherwise actively participated in the fraudulent scheme).

The Legislative Committee Comments to the statute state that "[k]nowledge of the facts rendering the transfer voidable would be inconsistent with the good faith that is required of a protected transferee." Cal. Civ. Code § 3439.08, Comment (1). Thus, some courts have held that a transferee lacks good faith if he or she has actual knowledge of facts which would suggest to a reasonable person that the transaction was fraudulently made. *See, e.g.*, *Cybermedia, Inc. v. Symantec Corp.*, 19 F. Supp. 2d 1070, 1076 (N.D. Cal. 1998); *In re Cohen*, 199 B.R. 709, 719 (B.A.P. 9th Cir. 1996).

Any judgment under these statute should be based upon the value of the asset transferred and "the judgment shall be for an amount equal to the value of the asset at the time of the transfer, subject to adjustment as the equities may require." Cal. Civ. Code § 3439.08(c). Although generally the creditor has the burden of proving the claims in these statutes, one claiming he is either a "good faith transferee" or that an adjustment is necessary based on the equities, has the burden of proving these claims by a preponderance of evidence. *Id.* § 3439.08(f).

A lawsuit to void the transfer may only be brought by a creditor who is injured by the transfer. *Mehrtash v. Mehrtash*, 93 Cal. App. 4th 75, 80 (2001). "[P]rejudice to the plaintiff is essential." *Id.* "A creditor has not been injured unless the transfer puts beyond reach property the creditor could subject to payment of his or her debt." *Fidelity*, 179 Cal. App. 4th at 858.

//
//
//

– 8 –

16cv2692

### B. Sufficiency of State Bank's Claim

There are multiple transfers at issue in this case. Each of the three Debtors individually transferred their one-third interest in the Banger Street Property via three individual Quit Claim deeds. The Patels later transferred part of the Bangor Street property, via lien, to Riverview. And, finally, in the April 2016 Settlement Agreement, Chhatrala agreed that if the three Quit Claim deeds to the Patels were voided, he would transfer to Riverview a lien on the property that had reverted to his name. Unfortunately, in both the FAC as well as the Response to the Motion to Dismiss, State Bank combines all of the above transfers at issue in this case. With respect to the Quit Claim deeds, from the three Debtors to the Patels, State Bank alleges sufficient facts that these transfers may be voided as fraudulent under § 3439. The second transfer, from the Patels to Riverview as part of the Settlement Agreement, is more tenuous. The Settlement Agreement agreeing that Chhatrala would transfer his interest in the Bangor Street Property if the Quit claim deeds were voided is even further removed. State Bank does not help by mixing the "badges of fraud" and alleging them against all transfers interchangeably.

There are insufficient allegations that the transfers to Riverview, both from the Patels and from Chhatrala in the Settlement Agreement agreeing to provide Riverview with a Replacement Deed of Trust, were, in fact, fraudulently made under § 3439.04. If State Bank believes these transfers were done to hinder, delay, or defraud it, there are insufficient factual allegations under Rule 8 to give Riverview notice of the reasons it has this belief. Furthermore, it appears from the documents presented to this Court that the transfer was given for value. Riverview had sued the Patels for fraudulent conveyance of the Bangor Street Property. The Patels settled this lawsuit by agreeing to the lien placed on the property in the amount allegedly owed to Riverview. If State Bank has additional facts that this transfer was somehow not done for value or was done to defraud State Bank, it must allege more facts than are alleged in the FAC.

The more difficult question is whether State Bank alleges sufficient facts under § 3439.08 that Riverview was an immediate or mediate transferee who did not receive the transfer in good faith. State Bank alleges that Riverview had actual knowledge that the initial transfer from the Debtors to the Patels was fraudulent. However, there are only allegations that Riverview had knowledge that the transfer was fraudulent as to Riverview. There are no allegations that Riverview had actual knowledge that the transfer was fraudulently made to avoid a debt from State Bank or even, in fact, that Riverview was aware of State Bank. Although there are allegations that Riverview believed the one Quit Claim deed from Chhatrala to the Patels was fraudulent, there are insufficient facts to support State Bank's theory that Riverview knew the other two Quit Claim deeds from Chhatrala's brothers were fraudulent. Finally, there are no allegations that Riverview colluded with any of the Debtors or that any of its conduct was deliberately wrongful. The fact that the Debtors may have chosen one creditor (Riverview) over another (State Bank) does not make the transaction unlawful. *See* Cal. Civ. Code § 3432 (a debtor "may give to one creditor security for the payment of his demand in preference to another").

Furthermore, State Bank fails to allege sufficient facts to show that it was injured by the transfer from the Patels to Riverview. State Bank alleges the Bangor Street Property is currently worth $5.5 million. Without knowing how much equity is in the property, however, it is not clear whether State Bank was injured by the $1.6 million lien in favor of Riverview.

Additionally, Riverview shows that even if the transfer from the Patels to Riverview is voided as part of its non-recourse guarantee, Chhatrala would be obligated to reissue the deed of trust with Riverview's lien. In order to void this transfer from Chhatrala, State Bank would have to allege that this transfer was fraudulent under § 3439 *et seq*. This, State Bank fails to do. Thus, State Bank fails to allege that the transfer to Riverview put property out of reach that State Bank could subject to payment of its debt.

## IV. CONCLUSION & ORDER

In light of the foregoing, the Court **GRANTS WITH LEAVE TO AMEND** Riverview's Motion to Dismiss (ECF No. 7). *See* Fed. R. Civ. P. 15(a); *Qpid.me, Inc. v. Schrom*, No. 13-cv-583-IEG(NLS), 2013 WL 4833990, at *4 (S.D. Cal. Sept. 9, 2013) (Gonzalez, J.) ("As a general rule, a court freely grants leave to amend a complaint which has been dismissed."). If State Bank chooses to file an amended complaint, it must do so no later than **July 31, 2017**.

**IT IS SO ORDERED.**

DATED: July 12, 2017

Hon. Cynthia Bashant
United States District Judge